IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02603-REB-KLM

NORBERTO PEREZ AROCHO,

      Plaintiff,

v.

HARLEY G. LAPPIN, Director of Federal Bureau of Prisons, and
S. NAFZINGER, Clinical Director,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on **Defendant's Motion for Summary Judgment**
[Docket No. 224; Filed February 28, 2011] (the "Motion").  Plaintiff, who is a prisoner
proceeding *pro se*, filed three ineffectual Responses to the Motion:  one on March 10, 2011
[Docket No. 228] and two on March 28, 2011 [Docket Nos. 232 & 233].  Given Plaintiff's *pro
se* status, the Court directed Plaintiff to supplement his Responses in compliance with  Fed.
R. Civ. P. 56(c) [Docket No. 231].  Plaintiff failed to do so by the deadline.  Based on
Plaintiff's prior submissions, Defendants waived their right to file a reply [Docket No. 227].
The Motion has now been fully briefed.

Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C., the Motion has
been referred to this Court for recommendation.  Having considered the pleadings, the
case file, and being fully advised regarding the issues, the Court recommends that
Defendants' Motion be **GRANTED**.

## I. Factual and Procedural Background[1]

Plaintiff, a prisoner proceeding *pro se*, brings claims against Defendants Steven Nafziger[2] and Harley Lappin, pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) to address the medical care that he received while incarcerated at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado.  Plaintiff is currently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri.  *Amended Complaint* [#192] at 2.  In his Amended Complaint, which is the operative pleading for purposes of resolving the Motion, Plaintiff contends that Defendants were deliberately indifferent toward a serious medical need by delaying appropriate medical treatment for Plaintiff's hepatitis C.  *Id.* at 3.  Specifically, Plaintiff claims that although Defendant Nafziger recommended to Defendant Lappin that Plaintiff receive Interferon/Ribavirin, a hepatitis C medication, he did not receive it and, thus, in addition to suffering hepatitis C damage to his liver, he has also contracted hepatitis B.  *Id.*

In his Amended Complaint, Plaintiff alleges two claims for relief:

Claim One    The Defendant S. Nafziger – Clinical Director – Was Personally Involved in the Violation of Plaintiff['s] Eighth Amendment Right Under the United States Constitution with Deliberate Indifference.

Claim Two    The Defendant Harley G. Lappin, Director of BOP – Was Personally Involved in the Violation of Plaintiff['s] Eighth Amendment Right Under

---

[1] The background facts are primarily taken from the Amended Complaint [#192] ("Amended Complaint") and my earlier Recommendation on the Motion to Dismiss [#131].  The Court will discuss the relevant disputed and undisputed facts where necessary in the analysis of Plaintiff's claims.

[2] The Court refers to Defendant "S. Nafzinger" by his actual name, Steven Nafziger.  *Nafziger Affidavit* [#224-1] at 1.

the Constitution with Deliberate Indifference.

Plaintiff's original Complaint was dismissed on March 2, 2009 [Docket No. 153]. Specifically, the Court recommended, and the District Judge agreed, that the claim against Defendant Lappin be dismissed for lack of personal jurisdiction. *Order* [#153] at 2; *Recommendation* [#131] at 11-13. The Court also recommended, and the District Judge agreed, that the claim against Defendant Nafziger be dismissed because "his attempt to seek approval of this medication on Plaintiff's behalf[] does not evidence the degree of neglect sufficient to find that [he] was deliberately indifferent to Plaintiff's medical needs." *Recommendation* [#131] at 18; *Order* [#153] at 2. Plaintiff appealed the dismissal of his case, and the Tenth Circuit reversed. *See Arocho v. Nafziger*, 367 Fed. Appx. 942 (10th Cir. Mar. 1, 2010) (unpublished decision).

Specifically, the Tenth Circuit rejected the conclusion that the claim against Defendant Lappin was barred by the lack of personal jurisdiction. Because Plaintiff's Complaint could be read to allege that Defendant Lappin was actively, as opposed to passively, involved in decisions concerning Plaintiff's medical care, the Tenth Circuit found that Plaintiff alleged sufficient information regarding personal jurisdiction to survive a motion to dismiss. *Id.* at 948-52. However, on remand, the Tenth Circuit noted that

> the question of personal jurisdiction can always be revisited at a post-pleading stage of the proceedings, where the evidence may show that the relevant facts are other than they have been pled (by showing, for example, that Lappin actually had nothing to do with the denial of Hepatitis C treatment, or was connected with the denial of treatment only through application of a broad policy issued at the national level and was unaware of any harm that would specifically befall Mr. Arocho in Colorado).

*Id.* at 950.

In addition, although the Tenth Circuit agreed that Plaintiff's allegations against

Defendant Nafziger did not rise to the level of deliberate indifference, see *id.* at 953-55 (noting, for example, that Plaintiff's allegations "appear[] to supply Nafziger with grounds for exoneration rather than liability"), it provided Plaintiff the opportunity to amend his allegations. In this regard, the Tenth Circuit noted that

> [w]hile the conclusory allegations regarding Nafziger's role in the delay/denial of treatment fall short of stating a claim, when viewed in the light of the litigation positions espoused by BOP Director Lappin, they nevertheless warrant the exercise of some caution in foreclosing the possibility of liability on Nafziger's part. The claims against these two defendants are to some degree in direct opposition, creating a "zero-sum game" of liability:  the stronger the claim that Nafziger failed to properly support or press for treatment, the weaker the claim that Lappin should be held liable for not approving it; conversely, the more Nafziger did to satisfy his duty to secure the necessary treatment, the stronger the claim against Lappin for denying it.

*Id.* at 954-55.

Pursuant to the present Motion, Defendants contend that they are entitled to summary judgment on both of Plaintiff's claims. First, Defendants contend that the Court lacks personal jurisdiction over Defendant Lappin. *Motion* [#224] at 9-11. Second, Defendants contend that several alleged bases for finding that Defendants have committed Eighth Amendment violations were not properly exhausted. *Id.* at 11-13. Third, Defendants contend that they are entitled to qualified immunity for any exhausted claims. *Id.* at 13-21.

## II.  Analysis

### A.    Standard of Review

Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if the outcome could be

decided in favor of either party. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it could reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As is the case here, where the movants do not bear the ultimate burden at trial, they need only satisfy the initial burden of demonstrating the absence of evidence to support the nonmovant's case. *In re Ribozyme Pharm. Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). Once the motion has been properly supported, the burden shifts to the nonmovant to show the existence of a genuine dispute of a material issue. The nonmoving party must go beyond the allegations in his pleading and provide "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy his burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The factual record and inferences therefrom are generally viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). However, to be entitled to preferential review, the nonmoving party must respond with competent evidence and cannot support his arguments on the basis of conclusory, speculative, or inadmissible statements. *Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

Finally, the Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### B.    Personal Jurisdiction – Defendant Lappin

As a court of limited jurisdiction, this Court may only exercise jurisdiction over nonresident defendants if:   (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution.  *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Therefore, a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute.

First, the Due Process Clause requires that Plaintiff demonstrate that Defendants have "minimum contacts" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

> The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction)

6

> or if the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).

*Impact Prods. Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004). Here, as Defendant Lappin resides and works in Washington, D.C. and does not have continuous and systematic contacts with Colorado, see *Lappin Affidavit* [#224-7] at 1, whether Defendant Lappin has sufficient minimum contacts is addressed by considering the factors relevant to specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Second, if sufficient minimum contacts are shown, "the Due Process Clause requires that [the Court] further consider whether the exercise of jurisdiction over [D]efendant would nonetheless offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190.

### 1.    Minimum Contacts

In determining whether Plaintiff has sufficiently shown that Defendant Lappin purposefully directed his actions at Colorado, the Court considers three elements:  (1) whether intentional actions were taken, (2) which were expressly aimed at the forum state, (3) with the knowledge that the brunt of the injury from the actions would be felt in the forum state. *Dudnikov*, 514 F.3d at 1072. As a preliminary matter, Plaintiff "must present 'something more' than the injuries [he] allegedly suffered as a result of the . . . out-of-forum [conduct] in order to [prove] that [Defendant] expressly targeted [him] or Colorado through this conduct." *Impact Prods.*, 341 F. Supp. 2d at 1191 (citation omitted). Moreover, when personal jurisdiction is addressed at an evidentiary stage, as it is here, Plaintiff bears the burden of proving sufficient minimum contacts by a preponderance of the evidence.

*Dudnikov*, 514 F.3d at 1070 n.4; *Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997).

Considering the evidence at issue here, despite allegations contained in the Amended Complaint – e.g., that it was Defendant Lappin's responsibility to approve Plaintiff's treatment for hepatitis C – there is no genuine issue of material fact regarding whether Defendant Lappin took any intentional actions which were directed at Plaintiff in Colorado. Stated another way, there is no evidence supporting the notion that but for Defendant Lappin's actual conduct, Plaintiff would not have suffered the alleged injuries at issue here. *See Dudnikov*, 514 F.3d at 1079. Consequently, his conduct cannot be said to have been taken with the knowledge that any injury would be felt in Colorado. The undisputed evidence is set forth below.

In his affidavit, Defendant Lappin avers that "[r]equests for medical treatment, including requests seeking approval for a particular drug therapy, are routed to the Assistance Director's, [Health Services Division ("HSD"], office. These requests are not addressed to me, nor do I review them." *Lappin Affidavit* [#224-7] at 2; *see also Motion* [#224] at 5. Defendant Lappin also avers that "I do not make decisions regarding the specific medical treatment of care that is provided to an individual inmate." *Lappin Affidavit* [#224-7] at 2. Moreover, "[a]ny decisions I made which may have affected the provision of medical services within the Bureau have been of general applicability to all Bureau facilities." *Id.*

Specifically in relation to Plaintiff, Defendant Lappin avers that "[d]uring the times relevant to Plaintiff's claims, I was not informed of his specific medical condition nor the request that he be approved for a particular drug therapy. . . . I became aware of Plaintiff's

condition through the filing of this lawsuit." *Id.* at 3.  To the extent that Plaintiff claims that

he informed Defendant Lappin of his condition prior to the filing of this lawsuit by sending

him an administrative grievance, Defendant Lappin avers that "[t]he Bureau's General

Counsel is responsible for the implementation and operation of the Administrative Remedy

Program . . ., [and] . . . I do not review, investigate or respond to Central Office

administrative remedy appeals[, . . . nor did I] review any appeal filed by Plaintiff in this

matter concerning his request for medical treatment." *Id.*  Finally, Defendant Lappin avers

that he did "not [have] any communication with former Clinical Director Dr. Steven Nafziger

concerning Plaintiff's medical conditions or his need for treatment." *Id.* at 4.

As noted above, this evidence is not disputed.  Although Plaintiff attempts to

undermine Defendant Lappin's affidavit, his attempts are ineffectual.  For example, Plaintiff

contends in his Supplemental Response that "Defendant Lappin have [sic] to order the

treatment of the interferon and the costs.  The Defendant denied the treatment

recommendation by Dr. S. Nafzinger [sic]." *Supplemental Response* [#232] at 2.  The

Supplemental Response is insufficient to raise a genuine dispute.  First, it is not a sworn

affidavit and is not competent summary judgment evidence.  *See generally* Fed. R. Civ. P.

56(c); *Wallin v. Dycus*, No. 03-cv-00174, 2009 WL 2490127, at *5 (D. Colo. Aug 13, 2009)

(unpublished decision) (noting that a plaintiff "cannot defeat a motion for summary

judgment by standing on his own unsupported, self-serving allegations").  Second, Plaintiff

provides no factual support for his conclusory statement that Defendant Lappin had

responsibility for approving Plaintiff's hepatitis C treatment.  *Conaway*, 853 F.2d at 792 n.4

("[A] nonmoving party may not rely merely on the unsupported or conclusory allegations

contained in pleadings to rebut the movant's factual proof in support of the motion for

9

summary judgment.").  Plaintiff's initial Response fares no better.  *See Response* [#228] at 2.

### 2.    Fair Play and Substantial Justice

Even if minimum contacts existed, I find that this presents "a compelling case that the exercise of jurisdiction would nonetheless be unreasonable and thus offend traditional notions of fair play and substantial justice."  *Impact Prods.*, 341 F. Supp. 2d at 1190.  In reaching this determination, I note that courts consider several factors, including

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).  In considering the factors most relevant to this case, I find that these factors weigh against exercising jurisdiction.

First, I find that the burden on Defendant Lappin in continuing to defend against a complaint in Colorado would be great because it would leave him susceptible to complaints filed by any prisoner incarcerated here given his high-ranking position and general oversight of individuals with responsibility for providing medical care.  The implications of such a decision would not be limited to cases brought in Colorado, and would arguably leave Defendant Lappin susceptible to lawsuits filed by prisoners in any jurisdiction where there is a BOP prison.  *See also Arocho*, 367 Fed. Appx. at 950 (recognizing that if Defendant Lappin's only conduct could be described as applying "a broad policy issued at the national level" which leaves him unaware of any harm that could befall prisoners in particular states, Plaintiff's claim cannot proceed against Defendant Lappin).

Second, given that Defendant Lappin resides and works in Washington, D.C., and

that Plaintiff is no longer incarcerated in Colorado, this state's interest in resolving the matter is decidedly small.  Third, while it cannot be disputed that Plaintiff's interest favors litigation against Defendant Lappin in the same forum where Plaintiff's claim against Defendant Nafziger is pending, given that the undisputed evidence also supports a holding that the claim against Defendant Lappin should be dismissed for lack of personal participation, there is simply no basis to compel this Defendant to defend Plaintiff's lawsuit in, at a minimum, this district, and as will be discussed below, any other district.  As such, I find that Plaintiff's apparent interest is outweighed by Defendant Lappin's compelling burden and the lack of a clear interest by the forum state in resolving Plaintiff's claim.

Therefore, I find that exercising jurisdiction over Defendant Lappin would also offend traditional notions of fair play and substantial justice.  Accordingly, I recommend that the Court decline to exercise jurisdiction over the claims against Defendant Lappin in this case.

### 3.     Transfer or Dismissal

Although I find that due process principles prohibit the exercise of personal jurisdiction over Defendant Lappin, the Court must consider whether to transfer the case prior to dismissal pursuant to 28 U.S.C. § 1631.  *Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006).  Section 1631 directs a court to "cure jurisdictional . . . defects by transferring a suit . . . when it is in the interests of justice."  *Id.* at 1222 (citing 28 U.S.C. § 1631).

> [The] factors warranting transfer rather than dismissal, at least under § 1631, include finding that the new action would be time barred, that the claims are likely to have merit, and that the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper.

*Id.* at 1223 n.16 (citation omitted).

11

Because the Court finds that the reasonableness of transfer depends upon whether Plaintiff has provided any material evidence that Defendant Lappin personally participated in his alleged injuries, I resolve the issue solely by considering whether Plaintiff's claim against Defendant Lappin has merit.  Although the Court is only required to conduct a "quick look" to determine whether transfer is necessary, see *Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir. 2000), the Court has considered all relevant evidence submitted by the parties.   On this evidence, there is no basis to conclude that Defendant Lappin committed any conduct that led to Plaintiff's alleged injuries.

Personal participation is a cornerstone of claims brought pursuant to *Bivens*.  *See, e.g.*, *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1952 (2009) ("[Defendants] cannot be held liable unless they themselves acted . . . .").  There is no evidence that Defendant Lappin personally participated in any decision related to Plaintiff's medical treatment or that he made any decision to delay such treatment.  To the extent that the Amended Complaint could be liberally read to assert supervisor liability against Defendant Lappin, such a claim is likewise insufficient.  *Id.* at 1949 (noting that supervisory official "may not be held accountable for the misdeed of [his] agents"); *see also  Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (holding that "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights'").

Furthermore, to the extent that Plaintiff seeks to hold Defendant Lappin accountable for his alleged participation in the grievance process, (1) there is no evidence that

Defendant Lappin participated in the grievance process,[3] and (2) even if he did, such a claim has been consistently rejected as providing a sufficient basis for finding that an individual personally participated in the commission of conduct which could be said to have caused the alleged injury.  *See, e.g.*, *Whitington v. Ortiz*, 307 Fed. Appx. 179, 193 (10th Cir. 2009) (citation omitted) ("[T]he denial of grievances alone is insufficient to establish personal participation in the alleged constitutional violations."); *Davis v. Ark. Valley Corr. Facility*, 99 Fed. Appx. 838, 843 (10th Cir. 2004) (sending "correspondence [to high-ranking prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983").  On the undisputed facts and law applicable here, Plaintiff's claim against Defendant Lappin would fail on its merits.

I find that transfer of this case would not be in the interests of justice and instead recommend that the case against Defendant Lappin be dismissed.  Although dismissal for lack of personal jurisdiction is typically done without prejudice, *see* *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002), because the Court also finds that Defendant Lappin did not personally participate in the conduct that led to Plaintiff's alleged injuries, his dismissal should be with prejudice.  Accordingly, the Court RECOMMENDS that Defendants' Motion be GRANTED with respect to Claim Two.

---

[3] Other than Plaintiff's unsupported contention that Defendant Lappin ignored Plaintiff's administrative grievance, *see* *Supplemental Response* [#232] at 3, he provides no competent summary judgment evidence to refute Defendants' well-supported averment that Defendant Lappin did not participate in the grievance process.  *See Bell v. Ward*, 189 Fed. Appx. 802, 804 (10th Cir. July 26, 2006) (unpublished decision) (holding that plaintiff's unsupported allegation that he had copies of the administrative appeal he had attempted to file was not enough, without providing the actual documentation, to survive a motion for summary judgment); *Maclary v. Carroll*, 142 Fed. Appx. 618, 620 (3d Cir. Aug. 9, 2005) (unpublished decision) (holding that plaintiff's "bare assertions" that his grievances were "unanswered and unprocessed" did not create a genuine issue of material fact).

C.    Exhaustion[4]

Defendants contend that the only claim against Defendant Nafziger which has been properly exhausted relates to his alleged failure to provide Plaintiff with Interferon/Ribavirin medicine for treatment of his hepatitis C.  To the extent that Plaintiff contends for the first time in his Amended Complaint that (1) Defendant Nafziger failed to vaccinate him such that he has now contracted hepatitis B; (2) Defendant Nafziger should have ensured that Plaintiff received proper care after Defendant Nafziger left the employ of BOP; and (3) Defendant Nafziger provided inadequate medical care generally, Defendant Nafziger argues that these alleged injuries/allegations have not been exhausted. *Motion* [#224] at 12.

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted before a prisoner may challenge those conditions via federal complaint.  *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences.").  Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

As noted above, Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to certain bases for finding an Eighth Amendment violation such that

---

[4] Because the Court lacks personal jurisdiction over Defendant Lappin, all remaining issues will only be addressed with respect to Defendant Nafziger.

he is barred from asserting a portion of his claim pursuant to the PLRA.  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 918-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").  However, the burden is not on Plaintiff to sufficiently plead exhaustion or attach exhibits to his Amended Complaint proving exhaustion.  *Jones*, 549 U.S. at 215.  Rather, the burden is on Defendants to assert a failure to exhaust in their dispositive motion.  Here, Defendants' failure to exhaust defense is analyzed pursuant to Fed. R. Civ. P. 56.  As such, if the evidence presented does not create a genuine issue in Plaintiff's favor as to whether his claims were properly exhausted, the Complaint *must* be dismissed without prejudice.  *See Dawson v. Werholtz*, No. 07-3165, 2008 WL 1773866, at *1 & n.1 (D. Kan. Apr. 16, 2008) (unpublished decision) (citing *Fields v. Ok. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice).

As a preliminary matter, the prison facility is tasked with the responsibility of establishing grievance procedures.  *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion.").  "Compliance with prison grievance procedures, therefore, is all that is required by PLRA to 'properly exhaust.'"  *Baldauf v. Garoutte*, No. 03-cv-01104, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (unpublished decision) (citation omitted).  Here, the grievance procedures and methods for tracking filed grievances were described in the affidavit of BOP supervisory attorney, Theresa Montoya [Docket No. 224-2].  Pursuant to the BOP grievance policy in effect, inmates must grieve any alleged injuries by pursuing a four-step

15

process:   (1) the inmate must attempt informal resolution with prison staff; (2) after receiving a response, the inmate must appeal the response to the warden; (3) upon completion of the warden's review, the inmate must appeal to the regional director; and (4) finally, the inmate fully exhausts his administrative remedies by appealing the regional director's decision to the national inmate appeals director in the general counsel's office in Washington, D.C. *Montoya Affidavit* [#224-2] at 2-3.

The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to fully exhaust his administrative remedies. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies.").   Despite the PLRA's strict requirements, there is a recognized exception to the requirement to exhaust when procedures are not available – e.g., when an inmate has been prevented from filing a grievance or the facility refused to answer a grievance. *See id*. This exception does not appear to be implicated here.

In support of their Motion, Defendants contend that the following facts are undisputed:  (1) Plaintiff exhausted his administrative remedies in relation to his claim that Defendant Nafziger failed to provide Interferon/Ribavirin treatment for Plaintiff's hepatitis C; however, (2) Plaintiff did not file grievances related to his claim that he was not vaccinated and therefore also contracted hepatitis B, his claim that Defendant Nafziger should have ensured Plaintiff's care after he left the employ of BOP or his claim that Defendant Nafziger generally failed to provide adequate medical care. *Motion* [#224] at 13. Specifically, Defendants cite the affidavit of Ms. Montoya, wherein she avers that BOP tracks the grievances filed by inmates, and that Plaintiff has not exhausted his

administrative remedies with respect to any of the claims set forth in (2) above. *Montoya Affidavit* [#224-2] at 3-6. While Plaintiff has filed multiple grievances regarding his medical care, none are related to the present conduct at issue here and, in fact, all were related to conduct or alleged injuries that occurred after Defendant Nafziger's departure. *Id.* at 5-6 (and attachments 3 & 4); *see also Nafziger Affidavit* [#224-1] at 2.

Although Plaintiff does not have to advance specific legal theories in his grievances, he must at least attempt to grieve the alleged conduct at issue such that if corrective action can be taken, sufficient notice has been provided to do so. *See Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006). I find that Defendants have met their initial burden of demonstrating the absence of evidence to show that Plaintiff satisfied the PLRA exhaustion requirement in relation to his failure to vaccinate claim, his claim that Defendant Nafziger should have ensured Plaintiff's care after he left the employ of BOP and his claim that Defendant Nafziger generally failed to provide adequate medical care.

The burden therefore shifts to Plaintiff to show the existence of a genuine dispute about his alleged failure to exhaust. Although he generally contends in his Supplemental Response that "his grievance was investigate [sic] at the highest level," *Supplemental Response* [#232] at 5, Plaintiff does not address Defendants' specific argument that he failed to exhaust certain alleged injurious conduct. Moreover, Plaintiff fails to provide an affidavit with supporting documentation that he exhausted all of the alleged claims at issue here. Plaintiff does not provide the Court with "actual evidence that would allow the [C]ourt to conclude that [his grievances were] in fact submitted." *Allen v. Schmutzler*, No. 07-cv-01224, 2010 WL 618489, at *6 (D. Colo. Feb. 18, 2010) (unpublished decision).

Therefore, with no further evidence before the Court, there is nothing to refute

17

Defendants' well-supported averment that Plaintiff failed to exhaust his administrative remedies with respect to his claim that he was not vaccinated and therefore also contracted hepatitis B, his claim that Defendant Nafziger should have ensured Plaintiff's care after he left the employ of BOP and his claim that Defendant Nafziger generally failed to provide adequate medical care. *See Montoya Affidavit* [#224-2] at 3-6. Accordingly, Defendant Nafziger is entitled to summary judgment on these allegations.

### D.      Qualified Immunity – Defendant Nafziger

Defendants assert that Defendant Nafziger is entitled to qualified immunity with regard to Plaintiff's remaining claim, namely that Defendant Nafziger's alleged failure to ensure that Plaintiff received Interferon/Ribavirin treatment constitutes deliberate indifference to a serious medical need. *Motion* [#224] at 13-21. Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.[5] *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814–18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Defendants argue that Plaintiff has not sufficiently alleged the violation of a constitutional right. *Motion* [#224] at 16-18.

When a defendant asserts a qualified immunity defense in a summary judgment

---

[5] To the extent that Plaintiff fails to establish the violation of a constitutional right, assuming Plaintiff has also asserted claims against Defendant Nafziger in his official capacity, such a claim should also be dismissed. *Dawson v. Johnson*, 266 Fed. Appx. 713, 715-17 (10th Cir. Jan. 8, 2008) (unpublished decision) (holding that dismissal of both official and individual capacity claims against an individual is appropriate where plaintiff failed to show particular defendant violated plaintiff's constitutional rights); *Ajaj v. BOP*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *4 n.6 (D. Colo. Mar. 10, 2011) (unpublished decision) (same).

motion, the burden first falls to the plaintiff to make a two-pronged showing that qualified immunity is inapplicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  Here, Plaintiff must establish that the named Defendant violated a constitutional right and that the right was clearly established at the time of the violation.  *Id.*  "If the plaintiff fails to satisfy either part of the . . . inquiry, the court must grant the defendant qualified immunity."  *Medina*, 252 F.3d at 1128 (citing *Albright*, 51 F.3d at 1535); *see also Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

Pursuant to the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  As such, the Eighth Amendment requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component.  *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation.  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation.'"  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (citations omitted).  "[A] medical need is considered

'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'"  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

As to the subjective component, the Court considers whether Defendant intended the deprivation, i.e., acted with deliberate indifference to the harm that could result.  *See id.*  The subjective element can only be proved by showing that Defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he actually drew that inference.  *Farmer*, 511 U.S. at 837.

Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, "a complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the . . . treatment which the inmate receives does not support a claim of cruel and unusual punishment.").  Further, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106; *see also Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").

Assuming Plaintiff has stated an objectively serious medical condition, Defendant

Nafziger's inability to immediately treat Plaintiff, while upsetting to Plaintiff, does not evidence the type of serious neglect that is meant to be addressed by the Eighth Amendment.

> The subjective component of a deliberate indifference claim requires an inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.  It is not enough to allege that prison official failed to alleviate a significant risk that [they] should have perceived but did not.  To show the requisite indifference, [the prisoner] must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.

*Kikumura*, 461 F.3d at 1291-93 (citations omitted).

The undisputed evidence fails to show that Defendant Nafziger had a culpable state of mind or disregarded Plaintiff's medical needs.  *Complaint* [#3] at 3.  Rather, the evidence shows that Defendant Nafziger made the proper diagnosis and submitted his request for treatment through the appropriate channels.  *See Nafziger Affidavit* [#224-1] at 2-7.  There is no evidence that he failed to comply with proper procedure, that he recklessly neglected his duty to seek permission for Plaintiff's treatment or any other fact that may raise a material dispute.  *See, e.g.*, *id.* at 7 (averring that if he (Nafziger) "had believed that Plaintiff suffered from a life-threatening condition that could not be treated at the ADX, [he] would have pursued immediate medical treatment for [Plaintiff] . . ." and stating that in his (Nafziger's) medical opinion, "Plaintiff had not and did not face a substantial risk of harm from the lack of Interferon/Ribavirin treatment").

Moreover, as Defendant Nafziger averred that it was customary for treatment approval to be delayed and, in his medical judgment, he did not view the delay to be a serious concern for Plaintiff, *Nafziger Affidavit* [#224-1] at 6-7, Defendant Nafziger did not knowingly ignore a substantial risk of harm or disregard that risk by failing to take

21

reasonable measures to abate it.  Plaintiff has not shown otherwise.[6]  Because "[t]he subjective component is not satisfied[] absent an extraordinary degree of neglect," the Court finds that the conduct and knowledge attributed to Defendant Nafziger fails to support a finding of deliberate indifference.  *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006); *see also Arocho*, 367 Fed. Appx. at 954 (recognizing that a failure to show that Defendant Nafziger did not adequately pursue the recommended treatment precludes Eighth Amendment liability).  Simply, no jury could find that Defendant Nafziger's conduct rises to the level of an Eighth Amendment violation.

Finally, to the extent that Defendant Nafziger's conduct could be viewed as an allegation that he unreasonably delayed in providing medical care, a constitutional injury is only implicated where the delay causes substantial harm.  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).  Further, that delay must be attributable to Defendant Nafziger's conduct.  *Garrett v. Stratman*, 254 F.3d 946, 950 n.4 (10th Cir. 2001).  First, leaving aside whether a material dispute exists regarding whether Plaintiff suffered substantial harm from

---

[6] As noted earlier, Plaintiff failed to submit an affidavit or any competent summary judgment evidence in support of his opposition to Defendants' Motion.  Although the Court could arguably use Plaintiff's Amended Complaint, which was sworn under penalty or perjury, to supply factual disputes about Defendants' conduct, both as to Defendant Lappin and Nafziger, see *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)), "a court should not adopt [a] version of the facts for purposes of ruling on a motion for summary judgment" where it "is blatantly contradicted by the record, so that no reasonable juror could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) (noting that affidavit with merely conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment).  Moreover, Plaintiff's failure to timely comply with the Court's Order to provide competent summary judgment evidence now waives his ability to do so at this late stage.  *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (noting that the failure to timely respond waives any right to controvert the facts asserted in the dispositive motion).

the delay,[7] as noted above, there is no evidence that Defendant Nafziger failed to seek permission from the appropriate individuals to treat Plaintiff or did not adequately fulfill his gatekeeper role. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2001).

Second, any delay after Defendant Nafziger left the employ of BOP cannot be attributed to Defendant Nafziger. As a preliminary matter, this portion of Plaintiff's claim is unexhausted. Moreover, *Bivens* claims can only be asserted against federal officials for conduct that occurred while in the service of their federal duties. *See generally Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) (noting that *Bivens* action lies only against federal agents performing conduct within the scope of their employment). Plaintiff has no constitutional remedy against Defendant Nafziger for anything he did or did not do after he left the employ of BOP. Finally, Defendant Nafziger avers, and Plaintiff has not shown otherwise, that he did not believe that the delay was significant or harmful. *See also Arocho*, 367 Fed. Appx. at 954 (recognizing that a failure to prove that Defendant Nafziger should have done something more than making the recommendation for treatment precludes Eighth Amendment liability). Simply, no jury could find that any delay that resulted from Defendant Nafziger's request was the fault of Defendant Nafziger.

_____

[7] Although Defendants assert that substantial harm can only be shown by providing expert medical testimony, see *Motion* [#224] at 16-17, their support for this sweeping representation comes from an unpublished case. *See Monroe v. Myers*, No. 05-cv-00351-WYD-MEH, 2006 WL 2361812, at *12-13 (D. Colo. Aug. 15, 2006) (unpublished decision). Leaving aside that case, which I am not obligated to adopt, the Court rejects Defendants' argument that a material dispute about substantial harm can never be raised without expert testimony. Although Plaintiff did not do so here, a plaintiff could present testimony in an affidavit of his condition during or following a delay of medical care which, if factually supported, would arguably suffice to raise a material dispute about this issue. A jury may well credit a plaintiff's observations about his condition during or after an alleged injurious delay that may sufficiently establish a link between the delay and the condition. *See generally Garrett*, 254 F.3d at 950 (noting that substantial harm can be satisfied by, among other things, showing that plaintiff suffered considerable pain).

Therefore, because Plaintiff has failed to show that Defendant Nafziger committed a constitutional violation, the Court finds that Defendant Nafziger's conduct should be protected by the doctrine of qualified immunity, and that Plaintiff's claim against him should be dismissed.  Plaintiff's failure to effectively assert the violation of a constitutional right necessarily means that any official capacity claim for injunctive relief must also be dismissed. *See Abu-Fakher v. Bode*, 175 Fed. Appx. 179, 181-82 (10th Cir. Mar. 16, 2006) (unpublished decision) (holding that prisoner's entitlement to injunctive relief was reliant on his ability "to state a claim for an Eighth Amendment violation").  Accordingly, the Court RECOMMENDS that Defendants' Motion be GRANTED with respect to Claim One.

### III.  Conclusion

Because no genuine issue of material fact exists regarding the Court's lack of jurisdiction over Defendant Lappin, Defendant Lappin's lack of personal participation in Plaintiff's alleged injuries, the lack of any evidence that Plaintiff exhausted certain claims and the lack of any evidence supporting a constitutional claim against Defendant Nafziger, entry of summary judgment pursuant to Fed. R. Civ. P. 56(c) is the appropriate result. Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendant's Motion for Summary Judgment [#224] be **GRANTED** and that summary judgment be entered in favor of Defendants on all claims.

Specifically, the Court RECOMMENDS that the claim against Defendant Lappin be dismissed with prejudice.  The Court further RECOMMENDS that the claim relating to the provision of Interferon/Ribavirin against Defendant Nafziger be dismissed with prejudice. Finally, the Court RECOMMENDS that any unexhausted claims be dismissed without

prejudice.[8]

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 21, 2011

BY THE COURT:

 s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix

---

[8] Although Defendants argue that dismissal of the unexhausted claims should be with prejudice because any grievances would be untimely if Plaintiff attempted to file them today, *see* 28 C.F.R. § 542.14, there is no evidence that BOP has rejected such grievances as untimely, which appears to be the prerequisite set forth by the Tenth Circuit to dismiss unexhausted claims with prejudice as opposed to without prejudice.  *See Kikumura*, 461 F.3d at 1290-91.